JUDGE PETERS
delivered the opinion op the court.
Oswell Gray being indebted to H. & A. McElroy, on tbe 29th of May, 1855, in the sum of five hundred dollars, executed to them a mortgage on lands in the County of Washington, described as the tract on which he lived, containing about one hundred and eighty-seven acres, including the tract he purchased from the heirs of Jacob Davis, deceased, except about seventeen acres thereof previously sold, and the tract he purchased of Mary Haymen. Said mortgagees assigned the debt to Nicholas and Thomas McDowell, who brought this action in equity for a foreclosure of the mortgage, and a sale of so much of the land as should be necessary to pay the debt; and Gray having in 1847 mortgaged the same land to Peter Brown, to secure a debt owing by said Gray to him, they were both made defendants to the actiop.
Within a short time after the suit was brought, the *477 appellants Anderson and wife were, upon their petition therefor, made defendants to the action, having an interest in the land derived in the following manner: the one hundred and eighty-seven acre tract named in the mortgage was devised by Jacob Davis, to whom it belonged, to his widow Susannah Davis during her life, and after her death to his two sons Thomas and Harrison Davis, by their paying to his two daughters Sarah Young and Elizabeth Davis one half of the valuation of said tract of land at the time they get possession of it.
It is alleged by them that the devisee Thomas Davis died in 1833 intestate, without having been married, and over twenty-one years of age — his father having died in 1831 — leaving his mother the said Susannah, his two sisters Sarah Young and Elizabeth Davis, and his brother Harrison Davis, his heirs. That the widow of testator died in 1857 intestate, leaving the two daughters of testator and Harrison Davis, if living, her heirs; but. that Harrison Davis, having married and being the father of several children, removed from Kentucky as early as 1837, and about 1841 connected himself and family with the community known as “Mormons,” went off with them to parts unknown, and has not been heard of by his relatives or friends in Kentucky since 1841, neither himself nor any member of his family, from which they insist the legal presumption arises that they are all dead; and that the mother and two sisters of said Harrison Davis were entitled, as his heirs, to his portion of said one hundred and eighty-seven acres of land.- That after the death of testator his daughter Elizabeth intermarried with their co-defendant Oswell Gray, by whom she had two children— appellant Rosa Ann, she having intermarried with the said R. M. Anderson, and ~W. T. Gray — and then died, leaving them her only heirs; and that the saidW. T. Gray, *478 on a good and valid consideration, had conveyed all his right to and interest in said land to his said sister, and has therefore no interest in the action. His deed is filed as an exhibit.
Anderson and wife further insist that as Thomas and Harrison Davis failed to pay to their sisters the one half of the value of the land at the death of their mother, and Thomas was certainly dead, and Harrison must be presumed to be dead, their shares or portions of said land passed by descent to their mother and sisters; and although Harrison Davis attempted to pass by deed all his right to said land to appellant Oswell Gray in 1887, he had then no vested interest; that he had only a contingent interest, depending on his surviving his mother and the payment by him of the one fourth of the value of the land to his sisters, neither of which had happened, and consequently nothing passed by his deed to O. Gray; and they also claim that they have a preferred lien on the land for the one fourth of the value thereof, which Mrs. Gray was entitled to under the will of her father, and which is preferred to the claim of the mortgagees.
The foregoing statement presents the questions raised by Anderson and wife in their answer and cross-petition.
Hardin Graves claims to have purchased the equity of redemption in the land, at a sale thereof by the sherifi’, under an execution against O. Gray; but as he is not a party to this appeal, this notice of his claim will suffice.
After the suit had been pending about three years, James H. Cunningham, upon his petition .filed for that purpose, was made a party to the action, and in his answer and cross-petition alleged that on the 27th day of January, 1843, said Oswell Gray, by deed absolute on it face, conveyed said land to himself and Elias Davison ii consideration of three hundred and seventy-seven dollar *479 and ninety-seven cents, which, said Gray then owed to him, and of one hundred and forty-one dollars and sixteen cents he owed to said Davison; but that they executed to Gray at the same time their obligation to reconvey the land to Gray when he should pay them respectively the sums named with interest, the conveyance being in fact only a security for the debt, and claiming that the debt to him was unpaid, and that he had a prior lien on the land for the security thereof, which he prayed to have enforced.
Gray does not controvert the debts to the several mortgagees, nor their light to a foreclosure and sale of all the land embraced in the mortgage, so far as he had title, except that as to the debt of Davison he says it is paid, which is admitted by Davison’s representatives, he having died; and as to Cunningham’s debt, he says in his answer “ he has not paid off” said debt; but the defendant pleads, and relies on the statute of limitations, that it has been more than twenty years since Cunningham’s debt was created, etc.
By the deed of Harrison Davis and wife to O. Gray, dated 29th July, 1887, after the death of Thomas Davis, they conveyed all their undivided interest in said land to him; and on the 15th of June, 1853, Sarah Suttles, formerly Sarah Young, daughter of the testator Jacob Davis, joined with her husband Calvert Suttles in a conveyance of all their interest in said land to Gray.
The court below, on final hearing, adjudged that on Thomas Davis’s death his sister Elizabeth, the mother of appellant Rose Ann Anderson, became entitled to one fourth of the half or one eighth of the tract of land devised by her father to her mother for life, remainder to her brothers, subject to the life-estate, and that her mother, brother, and sister took a like interest; that *480 on the death of Mrs. Susannah Davis, one third of her one eighth of said land passed to Mrs. Gray, she having survived her mother; which two interests were adjudged to be one sixth of the whole tract which on the death of Mrs. Gray descended to her children, subject to the life-estate of her husband Oswell Gray as tenant by the curtesy; and commissioners were appointed to allot to Mrs. Anderson one sixth of said land, having due regard to quality, etc., she having the interest of her brother.
As to the claim of Cunningham, it was adjudged that the plea of limitations presented no bar, and that on the coming in of the report of the commissioners so much of the land as was necessary therefor would be ordered to be sold to pay said debt; and also to sell so much of the land, including that on which Gray had only a life-estate, as would be required to pay the mortgage debts, according to their priorities, to be thereafter settled, and by agreement the judgment was to be considered as final for the purposes of this appeal; and of that judgment Gray and Anderson and wife complain.
The first important question to be noticed is, whether the peculiar language of Gray’s answer is such as to relieve the demand of Cunningham from the effect of the statute of limitations ? Nearly twenty years had elapsed since the accrual of the ..cause of action to the bringing of the cross-action to enforce its payment, and consequently it is barred by the statute, unless Gray has by an acknowledgment consistent with or amounting to a promise to pay the debt revived it.
It is said the law, as it is now settled, is that a debt barred by the statute may be revived by a new promise, express or implied, and an implied promise may be created from the fact of a positive and unqualified admission of the debt; but if the acknowledgment is accompanied *481 by any circumstances or expressions which repel the idea of an intention or willingness to pay, no implied promise is created, and the debt is not thereby revived. (Angell on Limitations, 247.)
The admission in the answer was not an express promise to pay, nor was it such an unqualified acknowledgment of the dqbt as to raise a promise by implication of law to pay, but it was connected with words which repel the conclusion that he had intention to pay; for in the same sentence, immediately after the admission, he says it had been more than twenty years since the creation of the debt, and he pleads and relies upon the statute of limitations as a bar to the action. The admission in the answer therefore can not have the effect,to take the case out of the statute. Wherefore the judgment in favor of Cunningham against Gray for the amount claimed by him was erroneous, and must be reversed, with directions to dismiss his cross-petition.
As to Anderson and wife, the legacy to Mrs. Gray— then Elizabeth Davis — for the payment of one half of the value of the land to her sister and herself by their brothers was a pecuniary legacy, and her husband by his marriage became entitled to the same, and as her survivor may hold it; and of the land, by the judgment, Mrs. Anderson gets the one eighth of the entire tract, the interest her mother took as one of the heirs of Thomas Davis, deceased, and the one third of one eighth the interest her mother took on the death of her grandmother, subject to the life-estate of her father, which is all she is legally entitled to.
Harrison Davis took a vested remainder in one half of the land under the will of his father, and his brother Thomas took a like interest. After the death of the latter, Harrison took one fourth of his half as an heir to his brother; and by his deed to O. Gray, after the death *482 of his brother, the half of the land which he took by devise from his father, and the one fourth of the other half which he took by descent from his brother, passed to Gray; but he or his heirs are entitled to the one third of one eighth the part his mother inherited from her son Thomas, as there is no evidence in this record that he has ever parted with that interest; nor are we authorized to conclude that he is dead, and his children are all extinct, because they have not been heard from in Kentucky since 1841. He had left the state with a family of children before that time, and from the connection he formed with the Mormons they may have and probably did remove to Salt Lake City, or some very remote part of the country, and, although not heard from here since, may have been heard from often in Missouri, where they went to when they left Kentucky. The facts will not authorize the legal conclusion that he and his whole family of children or descendants are extinct.
The deed of Buttles and wife was made in 1853, and passed to appellant Gray the interest in the land which Mrs. Suttles took as an heir to her brother Thomas; but her mother having died after the date of that deed, it did not pass the interest she acquired on the death of her mother, which is one third of one eighth.
Wherefore the judgment is reversed, and the cause is remanded, with directions for further proceedings consistent herewith.
Gray will recover costs of Cunningham and the appellees. The McDowells will recover their costs of Anderson and wife and Gray.
Judge Hardin not sitting.